Council, good morning, justices. My name is Paul Puglisi. I'm an assistant United States attorney out of Reno, Nevada, and I'm here representing the government in the case of United States v. Scott. If you're in the U.S. Attorney's Office, you should know that we are judges, not justices. My apologies, Your Honor. Thank you, sir. The government in this case believes that the actions taken by Officers Almeida and Officer Swam on the evening of June 4, 2003, were reasonable. And their conduct throughout the evening, both in going to the residence, searching the residence, conducting the urine test, arresting the defendant, and seizing the start-off 410 shotgun that was in the living room of the defendant's residence, was reasonable. Did they have probable cause for the search? For the search of the firearm? Did they have probable cause for any of the searches that they conducted? Let me say it that way.  Their initial reason for going there was a compliance visit to ensure that the defendant was keeping with the terms of the pretrial release. When they show up, they do not have probable cause for a search? Correct, Your Honor. Did they have reasonable cause? Yes, Your Honor. And the reasonable cause was based on information that was provided to Officer Swam earlier that day, that this defendant was, in fact, the defendant who had been arrested six weeks prior. And by reasonable cause, that's also the same thing as reasonable suspicion? Reasonable suspicion, Your Honor. It's a standard, definitely lower than probable cause. Do you have a finding? I'm sorry, sir? Do you have a finding that that's the case? Do you have a finding that you have reasonable suspicion? I believe Judge Hagen's ruling was that there was not – it was a close call, but there was not probable cause. I don't believe his order indicates that he found that there was reasonable suspicion. So you're just asserting it? Yes, Your Honor, because that wasn't considered. What the judge did was looked at the facts of the case and said reasonable suspicion is not enough. He looked to determine whether there was probable cause. He said it was a close call, but he did not believe there was probable cause. Therefore – and he believed that was the standard that need apply to this pretrial releasee. Is it your argument that they need only reasonable suspicion because of the paper he signed or merely the status of being a pretrial releasee on his own recognizance is enough to lower the standard from probable cause to reasonable suspicion? It's not just the fact that he's a pretrial releasee, Your Honor. It's the fact that he was a pretrial releasee, and based on the charges that he was facing in State court,  he was subject to urine test any time, day or night by a peace officer. But you're hanging your hat on the piece of paper he signed. The piece of paper – yes, in the court's order to the Department of Alternative Sentencing to monitor the pretrial releasees, this defendant's conditions. Referring to the same piece of paper when I say paper he signed and you're referring to the order that's, say, the one that has the check marks and so on? Yes, sir. Yes, sir. But you're hanging your hat on that piece of paper. Yes, sir. I'm looking at the East Fork Justice Court's conditions of bail release under own recognizance. I think the one that you were talking to Judge Fletcher about. There are two places on this form that have been checked that require him to do certain things without a warrant. One of them is to submit to random drug and or alcohol testing any time, day or night, by a peace officer without a warrant. And the second one, two lines below it, says you have to submit yourself, your residence and vehicle to search and seizure by any police officer day or night without a warrant. Now, is it your understanding, is it the government's contention, that the phrase without a warrant means without probable cause? In the facts? Or does it mean we just don't have to go get a warrant? If we have probable cause, we can come and search your house. We don't have to go to the trouble of obtaining a warrant. No, Your Honor. You still need a warrant unless there's certain circumstances in which a warrant is not necessary. And there are certain – Without a warrant? Yes, sir. Okay. In order to be able to search his house, do you have to have probable cause? You don't have to have a warrant. But do you still have to have probable cause? In other words, you can have probable cause for going into his house. No exigent circumstances. We've just got probable cause. But we don't want to go to the trouble of going down and getting the magistrate – rousting the magistrate out of bed in the middle of the night to get a warrant. And so he's waived it. But we might still have to have probable cause even though we don't have to get a warrant. Yes, that's true, Your Honor. Okay. But the government is not saying just simply because that document says without a warrant that it necessarily means – It's depending on the actions that the police officers engage in. The first step that occurs at that residence that evening is a urine test. The government is saying that there is a special need for urine testing without probable cause. Otherwise – Okay. I'm not asking a very specific question about this – about what this form means. Yes, sir. And I don't think it requires application. I think it just requires a question of interpretation. When the form says that we can search your house without a warrant, does that mean that we can search your house on something less than probable cause? Yes, sir. So that reasonable suspicion would be sufficient for us to come and search your house. And since we couldn't get a warrant without unreasonable suspicion, we can do it without the warrant as well. I'm sorry, sir. You lost me on that one. There are two requirements in the Fourth Amendment. One is that we have to have probable cause. The second is that we have to go and get the piece of paper. Even if we have probable cause, we still have to go and get the warrant unless we have exigent circumstances. Yes, sir. Exigent circumstances not at play here. Two things. We have to go to magistrate and with probable cause magistrate will sign a warrant. Even if we have probable cause, we can't go and search your house if we don't go and get the warrant. This form says we don't have to have a warrant to come and search your house. Now, do the police nevertheless have to have probable cause? To search the defendant's house. Right. If they do, you're dead. I guess your answer is no. My answer is no, Your Honor. Because you've already told us you didn't have probable cause. You don't have probable cause. And you certainly didn't have a warrant. Exactly. So why is your answer no? But once the officers go to the house, the government does not believe that the officers need probable cause to get a urine sample from this pretrial release. That would be sort of a similar question, but because that's a different line here that suggests that they can get, they can conduct random drug and alcohol testing without a warrant. Yes, sir. Same kind of thing. You don't have to have probable cause to perform a urinalysis. Exactly. And if that was the standard, the government believes that pretrial release program from both of you. And that's based on what? Where does the government get that authority? To order a urinalysis without probable cause. We believe that that's when you get to the balancing test of determining what the government's interest is versus the individual's privacy interest. No, you don't seem to understand the sequence. The question I wasn't asking is not is that authority constitutional, in which case you get into a balance. I'm asking is where do they get authority? They need to be authorized by law. Is it Nevada law that says this? The Nevada law allows the judge to impose conditions to ensure the safety of the community and that the individual will return to court. Where are these conditions? And where are the conditions? In the Nevada revised statute, sir. No, you said the Nevada law allows the judge to impose conditions. Yes, sir. Okay.  Where does the judge in this case impose conditions? The judge checked off the blocks on that form on, I believe, I want to say May 7th, 2003. And those are the blocks that are checked that indicate that the individual will be subject to the urine test any time of the day and night, a search without a warrant of his residence, person and vehicle for controlled substances and alcohol. That's the form that imposes the conditions of release by the judge in East Fork Township. Okay. So which of these conditions says they can search his house on less than probable cause? None, Your Honor. Okay. So let me get back to the question I asked. Where did the officers get the authority to do a search without probable cause? The search that led to the firearm in this case, the government contends, is a search incident to arrest. They had the authority to search the area within that defendant's, the area within his reach at a time that has not, time has not passed by intervening circumstance that make that search. The brief about being a pretrial detainee and all that stuff, that goes out the window. It doesn't go out the window, Your Honor, because to get to the search incident to the arrest, we need that special needs search that allows us to go to the home and get the urine test. Because without that. You've told me that the judge ordered that. Yes, sir. Okay. So the judge ordered that, and that's where they get the authority, and he consented to, say, you will do a random drug and alcohol testing any time of the day or night. Yes, sir. And in your view, that lets them, what, get through the door? That lets them walk through the door and search? That would let them walk through the door. And the government has indicated in the brief that the two officers from alternative sentencing knocked on the door. They told the defendant why they were there. He invited them in, and then they went to the rest of his bathroom for. This was consent. He let them in. Consent to obtain the urine sample. Yes, sir. But even if he had not. No, no. Consent to enter the house. I mean, they could have said step out here and give us a urine sample or, you know, come by the police car and the urine sample, or we'll take you down to the police station and you can give us a urine sample there. How did they get through the front door? In your view, he consented to it. He invited them in. Yes, sir, because as Officer Almeida testified at the proceeding, had he not consented to provide the urine sample at that time, they would have arrested him for not providing a urine sample. They didn't get. So this whole discussion about whether they have probable cause or less than probable cause or reason of suspicion, all of that turns out to be irrelevant, because you now say the reason they could do the search was incident to arrest. Yes, sir, but to get to the search incident to arrest, we still believe that we need to look at the special needs search, and that is acquiring the urine sample from the defendant. And that's what happened, has happened in this case. And in order for this to be justified based on a search incident to an arrest, the arrest has to be valid? Yes, sir. And why is this arrest valid again? Because the officers had reasonable suspicion that the defendant was not in compliance with his pretrial conditions. But not probable cause. Not probable cause, yes, sir. You concede that if they needed probable cause, this is not a valid arrest? Oh, yes, yes, sir, definitely. So if they needed probable cause, you lose. Exactly. If they need probable cause to enforce the conditions of pretrial release, any of these conditions, to include obtaining a urine sample, we lose. Yes, sir. Okay. And if I may, I'd like to reserve three minutes, 24, 25. Half an hour. I'll reserve whatever I'm able to, gentlemen. Good morning, Your Honors. May it please the Court. Cynthia Hahn for Appelli. Raymond Scott. I think what's really notable in the judges' and the district court's conclusion, he didn't find these officers very credible. There was a TRINET report, and TRINET stands for the Tri-County Narcotics Enforcement Team, that's the officers for ---- It doesn't much matter whether they were credible or not. You've got a form here where he says, I can be asked, I'm agreeing to random drug testing. And let's say they were not credible at all. They just knocked on his door because they wanted to do a random drug test, no suspicion whatsoever. And they say, okay, we're here to get you a urine sample. Why is that okay? And then when they get the urine sample, they find he's dirty. And they arrest him. And while arresting him, they say, hey, do you have any weapons, which is a perfectly appropriate thing for officers to say as arresting somebody, because they're in the house and somebody might, you know, he might grab a weapon or somebody in the family might grab a weapon. And he says, over there on the TV. Why isn't that the sequence?  The credibility of the officers doesn't matter at all. Okay. Well, two prongs. First of all, we do maintain that probable cause was necessary. This was a pretrial. He consented. Releasee. He consented. He consented. And the form states it needs probable cause to arrest. You must submit yourself to random drug or alcohol testing. Random means the very antithesis of having probable cause. You can flip a coin. You can draw a ball out of a, you know, one of those bingo things and say, you know, we've got all these pretrial people, and today's number will be them. And they pick a name at random, and this is how they go to it. Well, the typical. He consents to it right here. Yes. But the typical, in fact, way things work in Nevada is that people who are on only cognizance release go into the office and provide a urine sample. This is not the way things typically work. It doesn't say that. Now, he could have said, don't come in. I'd rather go to the office. But apparently he invited them in to the house. But why weren't they entitled to, any time of the day or night, to just knock on his door and say, we want you to give us a urine sample? I mean, so, you know, he signed. Yes. It's right here. Yes. Well, and. Is the consent not valid? Are you contesting that he. Are you contesting. In our briefs, we did not contest that there was anything wrong with the loop release form. We did not contest that in our briefs. Are you contesting it now? When you put it that way, I would have to, yes. When you put it that way, I would have to contest the validity. Well, it may be too late. But just out of my curiosity, why? Why am I contesting the validity? Well, on what basis? Because he's a pretrial releasee. He is not convicted of anything. He has constitutional rights under the Fourth Amendment. Yeah, but he's getting a good deal. He doesn't have to sit in jail. He gets to go home. Isn't that the quid pro quo? I think when you're talking that way, you're going into an equal protection argument, because why do people that post bail that have the money to do so with no conditions, and here's a poor person who can't post bail, and he's subject to, hey, give up your Fourth Amendment rights or we're not releasing you, whereas a rich person can post the bail and they can do anything they want. Yes, but that will always be true. I mean, Nevada could just simply say, okay, equal protection, we won't impose these kinds of conditions, but we're also not going to let people out at all, in which case the poor people will sit in jail because they can't post bail. It seems to me that's sort of a different set of problems than what we have here. I'm saying for the statutory scheme right now, that would be an equal protection violation the way you're discussing it. And the probable cause is required by the Nevada revised statute. That is required to be in any own recognizance release form. There's a reason for that. It appears here on the form. The words probable cause appear here on the form. But that is probable cause to believe that the named defendant has violated a condition of this release, so it says that in order to arrest him, they have to have probable cause. He hasn't waived that. No. But the fact of the matter is there is no other legal standard listed in this form except probable cause. So I don't know where the Court would find reasonable suspicion when it's not listed. It says probable cause, period. Well, if that's your contention, then these provisions without a warrant. You can go without a warrant and still require probable cause. They are not peanut butter and jelly. My question is, is that all he has waived is having to be shown the paper. It is for him to arouse a judge in the middle of the night and say, I have probable cause to go into this person's home and I need a warrant. That precludes Officer Suam or Officer Alameda from having to do that. However, there is nothing in this form that says he waives his right to anything below the standard of probable cause. Judge Kaczynski's question about the use of the word random. We can have random drug testing, but we still have to have probable cause? That doesn't sound very random, does it? I think it's random. How is it not random? We still have to have probable cause. That's not random. It is random when you consider, oh, I'm sorry. It is probable cause when you consider that I think the randomness goes to the time of day or night and not to the standard. Well, but it also says day or night. So random is doing some different work in that sentence than the words day or night since they're also repeated in that phrase. Random drug or alcohol testing any time of the day or night. By any peace officer without a warrant. It says nothing about without probable cause. Although in ordinary conversation, if we said it was a warrantless search, we might think that we did it without probable cause. That's sometimes just the way we talk in ordinary conversation. But while this is an ordinary conversation, this is the law. And the law is probable cause and a warrant is the normal law. Well, random can be used in two senses, random from the standpoint of the officer or random from the standpoint of the person being searched. From his standpoint, it sounds pretty random because they can show up any time. From the officer's standpoint, well, random may mean something else. If you show up any time, the officer may still have to have probable cause if it's random from the way he looks at it because he doesn't know when. Right. Is that your argument? That's pretty much where I'm coming from here. For a moment that the arrest is lawful, that is to say that the officers did not need as to the urine sample. They might have needed as to the search if they're coming in under the second clause about submit yourself, vehicle and residence search. They might have needed probable cause for that. But because of the use of the word random with respect to the drug sample in that previous clause, assume for a moment that this really means random in the sense that the officer can do it from his standpoint reasonably, randomly. And that, therefore, once they got the dirty sample, which turns out in the end after further sample testing not to be dirty, but at the time they have, you know, looks to them like it's a dirty sample and they have probable cause to arrest. Assume for the purpose of this question that the arrest is valid. Is this a valid search incident to an arrest that turns up this shotgun in the holster on the TV? No, sir. Because? Because. They were in that living room three times. You basically followed Kimele and said within the area of the person's control. They were in the living room three times with Mr. Scott. He was on the couch. They took him into the bathroom, tested him, tested dirty, which, by the way, came out negative later. He was on antihistamines. He was not on meth. Took him back into the living room again. Then took him all around the outside of the house, did a circuitous route around the outside of the house, searched the sheds, came back in, sat him again on the couch. All that time, nobody ever noticed that gun. And I. The question is, that's a plain view issue. Now, the question is search incident to an arrest. Right. All that time, even after they've arrested him, they're not asking him about weapons or anything else. I think that's the incident to an arrest issue. Well, once they search, a search incident to arrest is going to be the area within the subject's control. Mr. Scott was on the couch. The gun was found supposedly across the room from him. How big is the room? It's supposed to be a small room. There were no dimensions given for the room. Let me ask you this. Let's assume that the police arrest Mr. Scott and they parade him through the house, and then they search him, search all around the areas that are close to him as they move him through the house. Is that okay? That's to say, and at any given time, they're searching an area within his control. But they're moving him around the house, so by the time they're finished, they've been through the whole house. Is that okay? No, I don't believe so. Not unless they're looking for unless they claimed, which they didn't, they were doing a protective sweep or something of that nature. They never claimed that. Their argument might be, well, you know, they arrested him, and they moved him to various different places, and they finally got him on the couch, and they then proceeded to do a search. But they've been moving him all around. They moved him. They looked everywhere and searched everywhere except the living room. They never actually did a search of the living room. The only way they found that gun. In your view, then, a search incident to an arrest. No. Well, what if I say, well, this isn't a search incident to an arrest. It's, well, he told them, you know, they asked him, well, do you have any guns? He said, well, there's a toy gun over there. Does that cease to be a search because he's directed them to the court? No, now you're going into Miranda and under Siebert, the recent Supreme Court case in Siebert, you can't question, you can't circumvent Miranda by asking questions first and Mirandizing later. They're likely to lead to an incriminating answer. I'm sorry, I didn't understand. Once he's been arrested, you can't ask him a question likely to lead to an incriminating answer. Correct. And because they knew they were looking for a shotgun, this question is sufficiently likely to lead to an incriminating answer. To lead to an incriminating response. Well, not suppressing the answer. This is not a question where we say, you know, do we suppress the answer. They ask him a question. He gives an answer. The answer is not admissible, God forbid. But the answer says, hey, there's a gun over there. Yes. And they get the gun. Fruits of Miranda's statement on suppression. I understand under Patain that, you know, the gun itself is not suppressed in a violation of Miranda. But the very fact of the matter is, and the district. Miranda gives you no help at all. Yes, it does. Because there is a question as to whether these officers were being honest as to where the gun was found. And whether they would have seen it had Mr. Scott not indicated where it was in violation of his Miranda rights. Assuming that they would not have seen it. But they ask him a question. He says there are toy guns around. They say where are these toy guns. And he says right over there on the TV. Okay. His statement? Suppressed. If they want to produce it against him, it's not going to happen in this circuit, believe me. But they get a gun. You know, he points them to the television where there is a gun, which may be only feet away from him. Why isn't, you know, once he points to it, why isn't that? Are you, I'm not understanding that, Your Honor. Not the statement, right? Are you saying that that's not a Miranda violation? Is that what you're, you're assuming it's not a Miranda violation? I'm assuming it is a Miranda violation. He's in custody. He can't admit the statement. Pardon me? It's a Miranda violation, so his statement. Right. Cannot be admitted. But we're not trying to admit the statement. You're trying to suppress the gun. No, no, sir. We're trying to suppress the statement. That's very clear in our briefs. We are contending that had he not shown them where the gun was, they never would have seen it. It was not in plain view, and that's what the district court found. The district court found it was very hard to believe. Suppress the statement means the statement can't be introduced into evidence. What you're trying to do is suppress the gun. You're trying to suppress the fruits of the statement. No, sir. I'm trying to, I'm trying to suppress. I think you are. Well, I'm trying to say if they would have read him as Miranda rights and he said, then I would like to speak with an attorney. And I don't, I'm not saying anymore. I'm assuming they didn't do that, and I'm assuming the statement was inadmissible on the Miranda because it didn't have warnings. So now you suppress the statement. Then how do they find the gun? That's all you get. How do they find the gun? By relying on the statement. But they can do that. They can rely on the statement even though the statement is suppressible. You don't, what you need to do is suppress the gun. What you want to do is when you go to trial, you don't want to have the gun introduced into evidence. I think there's a fine line difference here. I would respectfully disagree with the Court because of Siebert, because the statements would be suppressed. I don't understand how the Court would see that they could find the gun if the statement had been suppressed because of Miranda violation. Well, the play here is the meaning of suppressed. Suppressed, I think, here means can't be introduced into evidence. And the statement clearly cannot be introduced into evidence. I think what you're arguing is the statement can't be used by the officers in figuring out where they're supposed to look. That's correct. That's your meaning of suppressed. That's exactly my point, is they can't use that statement. What authority do you have for that? Does the Supreme Court say that's exactly what you don't suppress? You don't suppress the fruit. That's right. Okay. The gun is the fruit. But there's no saying that gun would have been found without the statement. That's what fruit means. Fruit means you find it because of a constitutional violation. So is Your Honor saying never mind the statement, the statement doesn't matter if they violated his Miranda rights? I'm not – is that what you're saying, that it's okay to violate his Miranda rights and get that statement from him? I'm asking questions.  You're saying you suppress the statement. Suppress the statement. And the gun is fruit of the statement. I don't, you know, I don't. No, I understand under Patain that the fruit is not suppressed. I understand that. But still. The gun is the fruit of the statement. The fruit of the only meaning of the term. A statement. Which is that you find the evidence as a result of this constitutional violation. The Supreme Court said if it's fruit, it's admissible. So the police can circumvent my client's constitutional rights by saying, oh, well, we've got the gun. Even though if we had advised him of his Miranda rights, he wouldn't have told us where the gun was. I think you have it. I think that's what the Supreme Court said. Let me come at this a different way, and that is, is there asking him the question, are there any guns? I can't remember. I'm paraphrasing. I'm not sure precisely the form of the question. Where are the toy guns? Where are the toy guns? Is that question part of the search? No. Right there you're getting into Miranda. No, no, no. Don't go Miranda, please. Okay. What I want to know is, are they continuing to conduct a search? No. No, your answer is yes, please. My answer is yes, please? Your answer is yes. Are they continuing to conduct a search when they say, where are the toy guns? Well, I guess the answer is yes. It may be that this is a search that they're not permitted to undertake. That is to say, they can only do a search incident to an arrest. Yes. And if your argument is, well, incident to arrest is a search in the area under his control and temporally sufficiently contemporaneous with the actual arrest, this may not be part of the search incident to an arrest that's permitted incident to the arrest. So if asking where are the toy guns is part of the search, you win. So your answer is yes. I guess, Your Honor, I would say it was a very lazy search. Okay, but a search. A search. I'm glad you got the right answer. Is there anything else? Well, I'm not sure I understand your answer. Pardon me? I'm not sure I understand your answer. How is asking somebody questions a search? I said a search is when people look around, open drawers, look behind televisions. Well, you can find them. You know, knock, knock, knock on floorboards to see if there are any hidden compartments. That's what I understand a search to be. Since when is questioning somebody a search? Because he's asking where a particular thing is. So? So it directs him. Why is that interrogation? I mean, let's say he asks him, where is the heroin? And he says, or methamphetamine. And he says, oh, it's right here under the floorboard. If you just move the carpet and you lift the floorboard, you'll find the methamphetamine. And the officer says, oh, that's interesting. And then leaves the house, never looks under the floorboard. Was that a search? Never looks there. Pardon me? He gets the answer. He says, look under the floorboard. Yes. And then he doesn't do it. And then he doesn't do it. He leaves the house. He says, that's very interesting information. Thank you very much. Does he come back with a warrant? Then it would be a search. Well, no. Yeah, I mean, sure. He comes back without a warrant, and that would be a search, too. Yes. Or if he comes back next week and looks, that would be a search, too. But let's say he just leaves and never comes back. And all he's got is a statement saying there was heroin under the floorboard. He never looks for it. Is that a search? Yes. It's a search? Yes, because he's giving information as to the location of a prohibited item. So whenever somebody is asked about the location of a prohibited item, that becomes a search? It's a verbal search, yes. A verbal search. Yes. This is a new category. You know, forgive me, I don't remember a single case that deals with verbal searches. Do you have a single authority, anything supporting this idea? Isn't that what confessions are made of? We divide the world into two compartments, airtight compartments. There are things that come out of your mouth, and those are confessions or statements, and there are things that come from under the floorboard, and those are searches. Yes. And you don't meet. Well, I see a confession as something saying. I think you've been seduced by my colleague into the path of error. Oh, no, I'll put you back on the right path. Here we go. Okay. I'll signal to yes or no, okay? Is it pulling the right earlobe is yes and the left earlobe is no? I feel your honors are going way beyond what Counselor Alana and I contemplated was going to be in this argument. If you only hope so, you might as well go with it. I mean, assuming that if the officer discovered the toy gun on his own, that is to say, he didn't ask Mr. Scott, where are the toy guns? Instead, after this sequence of parading him around and so on, plunks him down on the couch and starts looking around the living room and looks in this apparently open box that looks like an open donut box. It doesn't say whether it's pink, and finds in it this holster that has in it the sawed-off shotgun. Assume that that is not a legal search incident to an arrest because they've paraded him around. The arrest took place a long time earlier. Maybe it's too far away. This is basically the finding of the district judge. Yes. Does it make it something better than an illegal search, a search not incident to an arrest, that he has asked Mr. Scott for help in the search? And Mr. Scott, while under arrest and not Mirandized, has foolishly helped him in the search. Does that make his thing anything less of a search? No. No? I knew that. I'm getting the hang of this. No, because it's still a search because he still wants to know where the guns are. He can't find them, so he reduces. What's the it you're referring to?  Oh, he can't find them. I meant the guns. No, no. What is the it that you say is a search? What is the it? Did I say that? Well, there's a lot of things. I'm not just supposed to describe. He's paraded around the house. He's asked questions. The officer goes. Finds a donor box and all that. What I'm asking is, which part of that is the search, the it that says, is it a search?  Yes. I mean, asking the question is a search. Yes, because they're not finished. They take him all around the house. I understand. I understand. Way beyond. While you might want it to be a search, but I'm just having trouble with the concept of asking a question is a search. Where do you get that, that asking somebody, where is the gun, is a search rather than an interrogation? Because. Can it be a search and an interrogation? Yes. I think this is. I think this is. I think this is both. He's interrogating him without Miranda. I've just never seen a case say that, that asking somebody a question is a search, that you can suppress on the Fourth Amendment, or you can suppress a statement on the Fifth Amendment under Miranda. But I've never seen a case in the history of the Republic. I haven't read every case, but where a statement, something that comes out of somebody's mouth has been suppressed on the Fourth Amendment. Actually, I just did a case, United States v. Washington, in which the Ninth Circuit suppressed. Did you hear the state? The statements, because they were asking him where his drugs were, and he said, I have a line of meth here in my room. And that was a suppression? And they found it and they suppressed it. They suppressed the drugs? They suppressed the methamphetamine, yes. Under the Fourth? Under the Fourth Amendment. United States v. Washington? United States v. Washington. Published opinion? Pardon me? Published opinion? Yes, sir. Did you cite it to us? I do not have the citation here because I didn't use it in the briefs, but it came out November 2nd. It wasn't the Fifth Amendment suppression, it was the Fourth Amendment suppression? It was the Fourth Amendment. Because of the statements? Because of the statements. Okay. They found, matter of fact, four or five constitutional Fourth Amendment violations. Too late to call for embankment in that case? Pardon me? Is it too late to call for embankment? I'm sorry, I missed it, because it was obviously funny. I'm sorry. I was wondering, is it too late to call for embankment in that case? Oh, well. The answer is probably not. Thank you. So there was a case where statements were suppressed under the Fourth Amendment. Okay. Well, we'll see if we can take care of that for you. Is there anything else? No, I think that's it. We've had enough fun? We thank you for that. Thank you. Actually, both of you are working very hard to be helpful, and we're tormenting you a bit in the spirit of trying to figure out. Well, actually, it's kind of complicated, so thank you. It is an unusual case. It's not that complicated. Thank you. Okay. This is how you will stand submitted. Well, next year, I'll keep on doing that.
judges: Kozinski, W. Fletcher, Bybee